UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CURTIS,

        Plaintiff,                        Hon. Paul L. Maloney

    v.                                      Case No. 1:19-cv-00112

DANA NESSEL,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brought this action against the Michigan Attorney General, pursuant to 42 U.S.C. § 1983, claiming that Michigan's statutory prohibition on private gambling violates his rights under the First, Tenth and Fourteenth Amendments.[1] He seeks declaratory judgment that the potential enforcement of those laws is unconstitutional. Plaintiff also seeks injunctive relief, as well as nominal damages.[2]

---

[1] Plaintiff's complaint also named the United States and the then Acting Attorney General of the United States. Plaintiff later voluntarily dismissed the claims against the federal defendants. (*See* ECF No. 10).

[2] Plaintiff has sued Michigan's Attorney General in her official capacity. (Compl. ¶ 18, ECF No. 1, PageID.3). Monetary relief is not recoverable in a Section 1983 case against official-capacity defendants. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a Section 1983 claim).

-1-

This matter is before the Court on defendant's motion to dismiss. (ECF No. 14, 15). Plaintiff filed a response (ECF No. 17) and defendant replied (ECF No. 21).[3] For the reasons stated herein, I recommend that the motion to dismiss be granted.

### BACKGROUND

Plaintiff's complaint consists largely of bare legal conclusions. Nevertheless, the following allegations can be gleaned from it.

Plaintiff is a citizen of the state of Michigan who currently resides in South Bend, Indiana. He primarily challenges three of Michigan's statutory provisions. (*See* Compl. ¶¶ 44-46, ECF No. 1, PageID.7). The first prohibits private games of chance, making such conduct a misdemeanor punishable by up to one year incarceration and a maximum fine of $1,000. MICH. COMP. LAWS § 750.301. The second prohibits the advertisement and public dissemination of information relating to betting, also a misdemeanor punishable by up to one year incarceration and a maximum fine of $1,000. MICH. COMP. LAWS § 750.305. The third prohibits the promotion of a lottery and the dispossession of property by means of a lottery, making such conduct a two-year misdemeanor. MICH. COMP. LAWS § 750.372.

---

[3] Plaintiff filed a sur-reply without seeking leave of Court. (ECF No. 22). Sur-reply briefs may not be filed without leave of Court. *See* W.D. MICH. LCIVR 7.2(c). Accordingly, plaintiff's sur-reply is disregarded.

Plaintiff claims an interest in developing and offering " 'equitable' games of chance," which would compete with Michigan's lottery. (Compl. ¶¶ 1, 22, ECF No. 1, PageID.1, 4). He defines equitable gambling as "risking money or other property for gain, contingent in whole or in part upon probabilities from which the operator derives no fees or income." (*Id.* at ¶ 24, PageID.4). Plaintiff contends that his gambling system would save Michigan resident's approximately two billion dollars annually as compared to Michigan's "loss-based" system, which directs a portion of funds collected to the game's operators. (*Id.* at ¶¶ 2, 5, PageID.1-2).

Plaintiff claims that Michigan's lottery scheme violates the state's sovereignty; that the state's prohibition on equitable games of chance violates his due process and equal protection rights; and that the state's gambling statutes violate his First Amendment rights to speech and association. Defendant moves to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) on the grounds that plaintiff lacks standing due to his failure to allege an injury-in-fact. In the alternative, defendant seeks dismissal under Rule 12(b)(6) on the basis that plaintiff's allegations fail to state a claim on which relief can be granted.

## **LEGAL STANDARDS**

Standing in its constitutional dimension is a threshold issue necessary to establish a case or controversy under Article III. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As the party invoking federal jurisdiction, plaintiff must demonstrate that he has standing to prosecute his claims. *See, e.g., Loren v. Blue Cross & Blue Shield of Michigan*, 505

F.3d 598, 607 (6th Cir. 2007). To establish standing, plaintiff must demonstrate that he has suffered a concrete, particularized, and legally cognizable injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to plaintiff to determine whether the complaint states a valid claim for relief. *See, e.g., In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000). Pursuant to Rule 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

-4-

> suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Stringfield v. Graham*, 212 F. App'x 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint is "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

*Pro se* complaints are to be held to a less stringent standard than those drafted by attorneys. *See, e.g., Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). That does not abrogate, however, plaintiff's obligation to meet the minimum pleading standards. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972). "[A] court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading.'" *Brown v. Matauszak*, 415 F. App'x 608,

-5-

613 (6th Cir. 2011) (quoting *Clark v National Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## ANALYSIS

Upon review of plaintiff's complaint, along with its attachments, I find that plaintiff has failed to establish standing to pursue his claims. In addition, I find that plaintiff's complaint fails to state a claim upon which relief may be granted. Accordingly, I recommend that the complaint be dismissed.

### I.   Plaintiff Has Failed to Establish Standing

Plaintiff's complaint includes three generalized claims of injury: (1) that he is living in a state that has abdicated its sovereignty and "destroyed the role of the ballot box as the sole and exclusive place of repealing undesirable legislation"; (2) that he has been "deprived of the right to pursue his chosen employment free of unreasonable government regulation"; and (3) that Michigan's criminal laws prohibit him not only from competing with the state's lottery, but also preparing to compete, depriving him of the "ability to hire employees, contract with firms, and communicate freely about his preparations." (Compl. ¶¶ 38-41, ECF No. 1, PageID.6-7). None of these alleged injuries are sufficient to establish standing.

Noticeably absent from plaintiff's claims is any assertion that he has suffered a concrete, particularized injury. Instead, he is seeking to vindicate generalized grievances that would apply equally to all Michigan residents. "The requirement that an injury be 'concrete and particularized' has two discrete parts: concreteness, which is

the requirement that the injury be 'real,' and not 'abstract,' and particularization, which is the requirement that the plaintiff 'personally [have] suffered some actual or threatened injury' as opposed to bringing a generalized grievance." *Crawford v. United States Department of Treasury*, 868 F.3d 438, 453 (6th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 472 (1982)). Abstract concerns do not constitute concrete injuries. *Crawford*, 868 F.3d at 453. A plaintiff raising only general grievances about government, "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.

Plaintiff's grievances regarding the state's alleged abdication of its sovereignty and the destruction of the ballot box apply equally to all Michigan residents. His alleged injuries are neither particularized to him nor are they concrete.

Plaintiff also lacks standing to bring a pre-enforcement challenge to Michigan's prohibition on private games of chance, as he fails to allege a credible threat of prosecution. "In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns on whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). The Supreme Court recognized that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial

risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citations and internal quotations omitted); *see also Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.").

In the *Susan B. Anthony List* decision, the Supreme Court acknowledged a substantial threat to future enforcement when there has been a "history of past enforcement[,]" a statutory provision "allow[ing] 'any person' with knowledge of the purported violation to file a complaint[,]" and evidence that enforcement proceedings "[were] not a rare occurrence." 573 U.S. at 164. Similarly, the Sixth Circuit has recognized credible threats of prosecution where plaintiffs allege "a subjective chill" and their claim includes some combination of the following factors: "(1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action." *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015); *Platt v. Board of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir. 2014); *Kiser v. Reitz*, 765 F.3d 601, 608-09 (6th Cir. 2014; *Berry v. Schmitt*, 688 F.3d 290, 297 (6th Cir. 2012)).

In the instant case, plaintiff claims an interest in creating and operating private games of chance in Michigan, but he fails to allege any fact that would suggest he faces a credible threat of imminent prosecution. His complaint presents nothing more than a generalized concern that he may be prosecuted should he proceed with his plan of creating his own lottery.

Moreover, plaintiff's asserted injuries are both hypothetical and speculative. A claim that rests on "a highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty International*, 568 U.S. 398, 410 (2013) (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009); *Whitmore v. Arkansas*, 495 U.S. 149, 157-60 (1990)). Plaintiff's putative injuries concerning his interest in developing and operating private games of chance depend upon his ability to obtain the financing and other resources to implement that plan.

Plaintiff alleges that he is a "serial entrepreneur" and that he was "invited to 'pitch' an equitable gambling company" at an entrepreneurial conference (a "demo day") through which he could obtain the investment needed to fund his company. He claims that "nearly all" companies invited to make such a "pitch" are successful in obtaining investors, and he expressed "little doubt" of his ability to obtain sufficient financing "to recruit the expertise [] necessary to effectively operate an equitable gambling company." (Compl. ¶¶ 31-34, ECF No. 1, PageID.5). Notwithstanding plaintiff's confidence in his ability to obtain the financing needed to implement his plan, that financing is a matter

-9-

of mere speculation at this point. Moreover, plaintiff's complaint concedes that his gambling company currently exists only in theory. (*Id.* at ¶ 22).

Plaintiff's response to the motion to dismiss fails to address the fundamental flaws in his pleading concerning standing. Instead, he notes that he "does not have time to have a fight over standing" (Pltf's Br. at 3, ECF No. 17, PageID.236), ignoring the fact that it is his burden to establish standing. *See, e.g., Lujan*, 504 U.S. at 561. Plaintiff's only arguments in support of standing are to complain about the timing of defendant's response to his complaint, and to claim that he is already violating Michigan law by advertising equitable gambling through his wholly-owned corporation. (Pltf's Br. at 3). The first is wholly irrelevant to the issue of standing. The second actually undermines plaintiff's claim to standing, as he makes no mention of any effort on the part of the State of Michigan either to interfere with his advertisements or to take any punitive action as a result of them.

Accordingly, plaintiff's complaint should be dismissed for lack of standing.

## II. <u>Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted</u>

Plaintiff's failure to establish standing requires dismissal of his complaint. Nevertheless, and in the alternative, I recommend that it be dismissed for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). The deficiencies of each claim are addressed below.

A. <u>Plaintiff's claim for violation of Michigan's sovereignty.</u>

In the first count of his complaint, plaintiff claims that Michigan's lottery scheme "violates the State's sovereignty by offering and entering into *quid pro quo* bargains for exemptions from its laws with its citizens." (Compl. ¶ 68, ECF No. 1, PageID.10). Plaintiff cites two exemptions: adults are permitted to purchase the state's lottery tickets; and retailers are permitted to sell the state's lottery tickets. Plaintiff contends that the violation of sovereignty is a "per se" violation of the Tenth Amendment. (*Id.* at ¶ 74).

Plaintiff's Tenth Amendment claim is utterly conclusory in nature. It falls well short of the permissive pleading standards enumerated in Rule 8(a)(2) ("a short plain statement of the claim showing that the pleader is entitled to relief"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted)).

Moreover, plaintiff's first count flies in the face of Supreme Court precedent. In *Stone v. State of Mississippi*, 101 U.S. 814 (1879), the Court addressed the issue of whether a state's legislature could irrevocably bind the state to a contract awarding the right to run a lottery. In 1867, the Mississippi state legislature passed an act that created a corporation to operate a lottery for a period of 25 years. In the next year, however, a constitutional convention adopted a new state constitution, later ratified by

the people, which contained a provision prohibiting lotteries. In 1870, the state legislature passed an act, pursuant to the new constitution, making it unlawful to conduct a lottery within the State of Mississippi. In holding that the 1868 constitution and the 1870 act validly abrogated the 1867 lottery charter, the Supreme Court acknowledged that a state's police power "extends to all matters affecting the public health or the public morals," and that "lotteries are proper subjects for the exercise of this power." *Id.* at 818.

More recently, the Supreme Court has reiterated that states have the inherent authority to legalize and regulate gambling. *See Murphy v. NCAA*, 138 S. Ct. 1461 (2018). In *Murphy*, the Court held that a federal statute – the Professional and Amateur Sports Protection Act – which prohibited states from authorizing sports gambling, violated the anticommandeering doctrine under the Tenth Amendment. *Id.* at 1475-81. The Court noted: "The legalization of sports gambling requires an important policy choice, but the choice is not ours [the Judiciary] to make. Congress can regulate sports gambling directly, but if it elects not to do so, each State is free to act on its own." *Id.* at 1484-85.

Plaintiff's reliance on the *Sebelius* decision is unavailing. In that case, the Supreme Court addressed a constitutional challenge to the Affordable Care Act. *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012). A number of states, as well as other parties, challenged the Act's individual mandate and the Medicaid expansion, arguing that Congress lacked authority to enact these

provisions. In other words, the Court was asked to analyze the scope of Congress' power to enact legislation. In conducting this analysis, the Court noted the distinction between the powers of the federal government and those of the states. Under the Tenth Amendment, the federal government's authority is limited to those powers enumerated by the Constitution, and it "must show that a constitutional grant of power authorizes each of its actions." *Id.* at 535. But the states enjoy inherent power to enact legislation, unless specifically prohibited by the Constitution. "[W]here such prohibitions do not apply, state governments do not need constitutional authorization to act." *Id.* There is nothing in the *Sebelius* decision that supports plaintiff's claim that the State of Michigan has violated its sovereignty.

    B.    <u>Plaintiff's due process and equal protection claims.</u>

Plaintiff claims that Michigan's prohibition on unlicensed private gambling violates both his due process and his equal protection rights. But, the Supreme Court held that "[g]ambling . . . implicates no constitutionally protected right." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993). More specifically, the Sixth Circuit has held that Michigan's prohibition on private gambling does not violate due process or equal protection rights. *See Northville Downs v. Granholm*, 622 F.3d 579, 588 (6th Cir. 2010) ("[Plaintiff] cannot overcome governing precedent holding that states may make fine distinctions in regulating gaming, up to and including favoring certain forms of gambling over others."); *United States v. Washington*, 879 F.2d 1400, 1401 (6th Cir. 1989) ("Michigan's statutes banning private lotteries satisfy the requirements of due process.").

Plaintiff's attempt to undermine the import of these holdings falls short. He relies on inapplicable case law, and he attempts to distinguish his case from *Northville Downs* and *Washington* by relying on factual allegations not contained within his complaint. (*See* Pltf's Br. at 5-7, ECF No. 17, PageID.238-40).

C.   Plaintiff's First Amendment claim.

Plaintiff alleges that Michigan's prohibition on gambling denies him his First Amendment rights to freedom of speech and of association "by prohibiting him from preparing to compete, fundraise[e], and advertis[e] equitable gambling." (Compl. ¶ 96, ECF No. 1, PageID.14).

Plaintiff's claim is patently unfounded. The First Amendment does not protect commercial speech concerning illegal activities. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1976). Moreover, plaintiff cites to no statutory provision that prohibits his political efforts to change the state's gambling laws.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that defendant's motion to dismiss (ECF No. 14) be granted. In addition, and for the same reasons, it is recommended that plaintiff's motion for preliminary injunctive relief (ECF No. 7) be denied.

Dated: August 7, 2019 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).